**STATE of Minnesota, Appellant,**

v.

**Timothy Allen EGGERSGLUESS, Respondent.**

**No. C2–91–2148.**

Court of Appeals of Minnesota.

April 7, 1992.

---

Hubert H. Humphrey, III, Atty. Gen., Louise T. Dobbe, Sp. Asst., St. Paul, Michael Junge, Glencoe, for appellant.

Mark A. Carrigan, Hutchinson, for respondent.

Considered and decided by PARKER, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

HARTEN, Judge.

This pretrial appeal by the state was brought pursuant to Minn.R.Crim.P. 28.04, subd. 1(1). Respondent Timothy Allen Eggersgluess was arrested for possession of cocaine following a search arising from a state trooper's investigation of an open bottle violation. At the pretrial evidentiary hearing, the trial court excluded cocaine found on respondent's person and his admission that the substance was "coke." The state argues that the suppression was erroneous because there was probable cause for the trooper to frisk respondent a second time, to remove an unknown item from his stocking and inspect its contents. We affirm.

## FACTS

On March 16, 1991, at approximately 4:45 p.m., Trooper Buck of the State Patrol stopped to assist a motor vehicle legally parked by the side of the road. As he approached, he observed four people in the vehicle and noticed that the driver, Dale Schmidt, appeared to be reaching down to his right. After observing a mug of beer in the possession of the front seat passenger, Jay Hedin, Buck asked the occupants to hand their alcohol to him. Schmidt and Hedin handed out open beers and the passengers in the back seat, David Gasper and respondent, handed Buck two sealed containers of beer.

Buck decided to search the vehicle for additional open bottles and asked the parties to step from the vehicle. Because Buck believed that "there is always a possibility of [a weapon] being there," he searched each occupant for weapons and for open bottles. After patting down the outer clothing of Gasper and respondent and finding nothing, Buck patted down Schmidt and found a hard object. Schmidt removed the item, which was a kit commonly used for smoking marijuana. Buck decided that "it was a more serious situation, or could progress into a more serious situation" and felt he needed "to go back and do a better pat-down search of all the individuals."

During this second frisk of respondent, Buck felt an object underneath respondent's clothing between his knee and his ankle. Buck could not determine the size or shape of the item so he asked respondent to remove the item, which turned out to be a one inch by two inch cardboard matchbox. Buck opened the matchbox and, without giving a *Miranda* warning, asked respondent what it contained. Respondent replied, "coke." Respondent was then placed under arrest and later was charged with possession of cocaine.

After a pretrial evidentiary hearing, the trial court found that Buck was justified in asking respondent to exit the vehicle, but that he lacked probable cause to believe that respondent had contraband or weapons on his body. The trial court suppressed the cocaine and the statement as fruits of an unreasonable search. This appeal followed.

## ISSUES

1. Did the trial court err in finding no probable cause to search respondent for an open bottle?

2. Did the trial court err in finding no probable cause to search respondent for weapons?

3. Did the trial court err in finding no probable cause to inspect the contents of the matchbox?

## ANALYSIS

In a pretrial appeal, the state must demonstrate clearly and unequivocally that the trial court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987). In establishing "critical impact," the state must show that lack of the suppressed evidence significantly reduces the likelihood of conviction. *Id.* at 551. We accept the trial court's findings of fact unless clearly erroneous, but we independently apply fourth amendment case law to those facts. *See State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988). The state has shown critical impact inasmuch as the exclusionary ruling effectively resulted in dismissal of the charge; however, the state must still show that the exclusion was clearly erroneous.

1. The first issue is whether Buck was justified in conducting a pat-down search of respondent for an open bottle. The state claims that respondent's presence in a car where violations of the open bottle law had occurred justified Buck's decision to conduct a pat-down search for further evidence of that violation. We find that respondent's mere presence in a vehicle where the driver and one other passenger possessed open bottles did not create probable cause to suspect that respondent, a

passenger in the back seat, was also violating the open bottle law [1].

■ Buck's suspicion that respondent may have had an open bottle derived solely from his observation of the conduct of others. He had no independent, articulable facts indicating that respondent was engaging in criminal activity. Conduct of third parties cannot provide probable cause to search a person unless the person's actions afford independent suspicion that he too was engaged in the prohibited conduct. *See State v. Slifka,* 256 N.W.2d 90, 91 (Minn.1977) (officers who saw open bottle on front seat had probable cause to search driver but not defendant who was a passenger in the front seat; officers could not search merely because he was present in the vehicle). Because mere presence is insufficient to establish probable cause to search, we find that the state has not shown that the trial court's holding that there was no probable cause to search respondent for an open bottle is clearly erroneous.

■ 2. Similarly, the trial court determined that Buck lacked probable cause to believe that respondent had a weapon. The United States Supreme Court has held that warrantless searches "are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted), *quoted in State v. Dickerson,* 481 N.W.2d 840, 843 (Minn.1992). One such recognized exception is the protective pat search for weapons. *Id.* Here, Buck's only basis for surmising respondent may have been armed was Buck's postulate that it is always possible that a weapon may be present. An assumption that weapons might always be present when a law enforcement officer confronts a citizen, standing alone, cannot amount to adequate cause to pat search for weapons. *See State v. Payne,* 406 N.W.2d 511, 513 (Minn. 1987) (the right of officers to "frisk" is not

the automatic sequel of a valid stop); 3 W. LaFave, *Search and Seizure,* § 9.4(a), at 505 (2d ed. 1987) (mere belief that every person encountered may be armed "cannot mean * * * that a search for weapons may be undertaken in every case").

■ An officer may conduct a pat-down of a lawfully stopped person if the officer is able to point to specific, articulable grounds for the belief that the suspect is armed and dangerous. *Wold v. State,* 430 N.W.2d 171, 175 (Minn.1988) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). If the only justification for a search during an investigatory detention is discovery or preservation of contraband, however, the intrusion is not authorized. *See United States v. Gonzalez,* 763 F.2d 1127, 1130 n. 1 (10th Cir.1985); *see also People v. Cobbin,* 692 P.2d 1069, 1072 (Colo.1984) (once pat-down shows that the suspect is not armed, the police may not without probable cause once again search the suspect and confiscate and seize any items discovered).

■ The record here is devoid of facts supporting a reasonable belief that respondent was armed or dangerous. The alleged crime Buck was investigating was not one where respondent would likely be armed and dangerous; it was not a crime such as robbery, assault with weapons or homicide. *See Wold,* 430 N.W.2d at 175. Rather, this confrontation derived from a routine traffic investigation performed during daylight hours. *See* LaFave, § 9.4(a) at 507 ("for other types of crimes, such as * * * illegal possession of liquor * * * there must be, as Justice Harlan noted in *Terry,* 'other circumstances' present" to justify a weapons search). Nor were other circumstances present that would justify a search for weapons; there was no bulge in respondent's clothing, threat to Buck, observation of a weapon, or sudden or furtive movement toward a place where a weapon could be concealed.

---

**1.** A passenger can only violate the open bottle law by having an open bottle "in possession." Minn.Stat. § 169.122, subd. 2 (1990) ("posses-

sion" means actual possession of the bottle or consciously exercising dominion and control over it).

In short, the confrontation here presented no evidence that a reasonable person would have considered to be threatening to the officer. *See Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 (facts must be judged by objective standard of whether available facts at the time of the search would warrant a reasonably cautious person in believing that the action taken was proper). We hold that Buck's search of respondent for weapons was not supported by probable cause.

We decline to adopt the reasoning of some United States Courts of Appeals circuits in concluding that all

> companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed.

*United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir.1971). We believe that the prevailing trend, which rejects the "automatic companion rule" of *Berryhill* as unconstitutional and unsound, is a better approach and is consistent with both state and federal constitutional law. *See United States v. Flett*, 806 F.2d 823, 827 (8th Cir. 1986). The mere fact that respondent accompanied others who were suspected of criminal activity is insufficient to justify a weapons search of the respondent.

We hold that the scope of a pat-down search must be strictly limited to a search for weapons that could be used to assault the officer or others nearby. We hold that the trial court's judgment that Buck's search of respondent for weapons was unsupported by probable cause was not clearly erroneous.

3. In light of our conclusion that Buck lacked probable cause to search respondent for alcohol or weapons, we need not address the final issues regarding Buck's inspecting the contents of the matchbox and asking respondent to identify them.

### DECISION

The state bears a high burden of proving that the trial court's conclusions of law excluding the evidence were clearly errone-

ous. The state has failed to show that the trooper had probable cause for searching respondent for an open bottle or weapons. Having failed to show that the trial court's suppression ruling was clearly erroneous, the state's appeal fails. Therefore, we affirm the trial court.

Affirmed.